# EXCERPT 27



DEPARTMENT OF HEALTH & HUMAN SERVICES       Centers for Medicare & Medicaid Services

*Deputy Administrator*
Washington, DC 20201

Stephen P. Miller
Commissioner
Cabinet for Health and Family Services
275 East Main Street, 6 West A
Frankfort, KY 40621

Dear Mr. Miller:

The Centers for Medicare & Medicaid Services (CMS) is approving the Commonwealth of Kentucky's request for a new section 1115 demonstration project, entitled "Kentucky Helping to Engage and Achieve Long Term Health" (KY HEALTH) (Project Number 11-W-00306/4 and 21-W-00067/4). This statewide demonstration is approved under the authority of section 1115(a) of the Social Security Act (the Act), effective January 12, 2018, through September 30, 2023.

**Extent and Scope of Demonstration**

The KY HEALTH demonstration aims to transform the Kentucky Medicaid program to empower beneficiaries to improve their health. The KY HEALTH demonstration broadly encompasses several initiatives impacting a wide range of Kentucky Medicaid beneficiaries. Consistent with the Secretary's authority and with standard practice, the demonstration is being approved for a 5-year period, subject to the Special Terms and Conditions attached. Within KY HEALTH is a program called Kentucky HEALTH, into which Kentucky will enroll adult beneficiaries who do not qualify for Medicaid on the basis of a disability.

The Kentucky HEALTH program includes two consumer-driven tools, the *My Rewards Account* and the *Deductible Account*, which encourage beneficiaries to maintain and improve their health by providing incentives for healthy behavior. Beneficiaries will receive incentives in their *My Rewards Account* that can be used to obtain enhanced benefits. Kentucky will implement the *Deductible Account* as an educational tool to inform beneficiaries about the cost of healthcare.

In addition, Kentucky will implement a community engagement requirement as a condition of eligibility for adult beneficiaries ages 19 to 64 in the Kentucky HEALTH program, with exemptions for various groups, including: former foster care youth, pregnant women, primary caregivers of a dependent (limited to one caregiver per household), beneficiaries considered medically frail, beneficiaries diagnosed with an acute medical condition that would prevent them from complying with the requirements, and full time students. To remain eligible for coverage, non-exempt beneficiaries must complete 80 hours per month of community engagement activities, such as employment, education, job skills training, and community service. Beneficiaries will have their eligibility suspended for failure to demonstrate compliance with the community engagement requirement and will be able to reactivate their eligibility on the first day of the month after they complete 80 hours of community engagement in a 30-day period or a

state-approved health literacy or financial literacy course. Beneficiaries who are in an eligibility suspension for failure to meet the requirement on their redetermination date will have their enrollment terminated and will be required to submit a new application. Kentucky will provide good cause exemptions in certain circumstances for beneficiaries who cannot meet requirements.

CMS is also authorizing additional waivers and expenditure authorities for the Kentucky HEALTH program, including:
- Premiums for beneficiaries in the new adult group and section 1931 parents and other caretaker relatives (with exceptions for pregnant women, former foster care youth, and those determined medically frail);
- Consequences for beneficiaries who do not pay premiums after a 60 day payment period;
- Six month non-eligibility period for certain populations for failure to comply with the redetermination process;
- Disenrollment and six month non-eligibility period for certain populations for failure to report a change in circumstance that would affect Medicaid eligibility;
- Limiting managed care organization disenrollment without cause; and
- A waiver of retroactive eligibility for certain populations.

CMS is also approving the following additional waiver and expenditure authorities for the KY HEALTH demonstration as a whole:
- A waiver of non-emergency medical transportation (NEMT) for certain populations and services; and
- Alignment of a beneficiary's annual redetermination with their employer sponsored insurance (ESI) open enrollment period, including any children enrolled in Medicaid or CHIP and covered by a parent or caretaker's ESI.

The KY HEALTH demonstration will also include a substance use disorder (SUD) program available to all Kentucky Medicaid beneficiaries to ensure that a broad continuum of care is available to Kentuckians with SUD, which will help improve the quality, care, and health outcomes for Kentucky Medicaid beneficiaries.

**Determination that the demonstration project is likely to assist in promoting Medicaid's objectives**

Demonstration projects under section 1115 of the Act offer a way to give states more freedom to test and evaluate innovative solutions to improve quality, accessibility and health outcomes in a budget-neutral manner, provided that, in the judgment of the Secretary, the demonstrations are likely to assist in promoting the objectives of Medicaid.

While CMS believes that states are in the best position to design solutions that address the unique needs of their Medicaid-eligible populations, the agency has an obligation to ensure that proposed demonstration projects are likely to better enable states to serve their low-income populations, through measures designed to improve health and wellness and help individuals and families attain or retain capability for independence or self-care. Medicaid programs are complex and shaped by a diverse set of interconnected policies and components, including eligibility

standards, benefit designs, reimbursement and payment policies, IT systems, and more. Therefore, in making this determination, CMS considers the proposed demonstration as a whole.

In its consideration of the KY HEALTH proposal, CMS examined whether the demonstration was likely to assist in improving health outcomes; whether it would address behavioral and social factors that influence health outcomes; whether it would incentivize beneficiaries to engage in their own health care and achieve better health outcomes; and whether it would familiarize beneficiaries with a benefit design that is typical of what they may encounter in the commercial market and thereby facilitate smoother beneficiary transition to commercial coverage. CMS has determined that the KY HEALTH demonstration is likely to promote Medicaid objectives, and that the waivers and expenditure authorities sought are necessary and appropriate to carry out the demonstration.

### 1. The demonstration is likely to assist in improving health outcomes through strategies that promote preventive care and SUD services, and address certain health determinants.

Kentucky HEALTH is designed to address the unique challenges the Commonwealth is facing as it endeavors to maintain coverage and promote better health outcomes among its residents. For example, Kentucky HEALTH is designed to incentivize more individuals to seek preventive care through mechanisms like earning funds in the *My Rewards Account* for healthy behaviors. During the first year of Kentucky's Medicaid expansion, fewer than 10 percent of beneficiaries received an annual wellness or physical exam. Under Kentucky HEALTH, the *My Rewards Account* incentives for healthy behaviors are expected to incentivize uptake of preventive services, which we believe can help improve beneficiary health. In addition, the SUD program supports Medicaid's objectives by improving access to high-quality services, and is critical to addressing Kentucky's substance use epidemic.

Beyond promoting access to high-value health care services, the demonstration also supports coordinated strategies to address certain health determinants, as well as promote increased upward mobility, greater independence, and improved quality of life. Specifically, Kentucky HEALTH's community engagement requirement is designed to encourage beneficiaries to obtain employment and/or undertake other community engagement activities that research has shown to be correlated with improved health and wellness. Kentucky will incentivize participation in community engagement activities by making eligibility contingent on completion of certain requirements.

CMS has long supported policies that recognize meaningful work as essential to the economic self-sufficiency, self-esteem, well-being, and improved health of people with disabilities. However, CMS has not previously approved a community engagement requirement as a condition of eligibility. Given the potential benefits of work and community engagement, we believe that Medicaid programs should be able to support these activities and test incentives that are appropriate for this population and lead to improved health outcomes.

In the past, CMS has approved demonstrations which provided referrals to employment services or encouragement to seek employment. We understand from some states that these incentives

0004

may not have been strong enough to influence individual beneficiary behavior. CMS and Kentucky believe that Kentucky HEALTH's community engagement incentive is likely to be more effective than other incentives or referrals to employment services, as it provides for the consequence of eligibility suspension for non-compliance. Kentucky HEALTH will also provide "on-ramps" to appropriately support individuals who have experienced a suspension or lapse of eligibility in regaining access to the program's benefits and resources. This is also likely to further incentivize individuals who have had their eligibility suspended to quickly satisfy the community engagement requirement and regain eligibility. The impact of this incentive, as well as other aspects of the demonstration, will be assessed though an evaluation designed to measure how the demonstration affects eligibility, behavior, and health outcomes over time for persons subject to the demonstration's policies.

We anticipate that the incentives provided under the demonstration for healthy behaviors and community engagement will promote Medicaid's objective of improving beneficiary health. Further, if improved uptake of preventive care and access to SUD services results in lower overall cost of care for Medicaid-eligible populations, the demonstration may also enable the state to stretch its Medicaid resources as far as possible. Kentucky leaders have expressed the importance of this demonstration as a means of preserving coverage for individuals.[1] Without fundamental, sustainable reforms, the Commonwealth expressed that it would be unable to maintain access for currently enrolled populations.

In addition to promoting improved health outcomes for Kentucky HEALTH beneficiaries by encouraging and supporting employment and other community engagement activities, the demonstration may also promote individual independence and reduce reliance on public assistance by creating incentives for individuals to obtain and maintain coverage through private, employer-sponsored insurance. This policy goal also aligns with the authorizing language in Section 1901 of the Social Security Act, which cites attaining or retaining independence as one of the program's purposes. The Commonwealth will connect beneficiaries with opportunities including education, job training, substance use disorder treatment, employment or volunteering. This statutory objective supports Medicaid program designs that enable and encourage enrolled individuals to seek economic self-sufficiency, which this demonstration proposes to do through employment and other community engagement activities.

### 2. The demonstration is likely to strengthen engagement by beneficiaries in their personal health care plan, and provide incentives for responsible decision-making.

Kentucky expects that the use of beneficiary-directed accounts, as well as redetermination and reporting requirements, will also strengthen beneficiary engagement in their personal health care plan and provide an incentive structure to support responsible consumer decision-making.

Prior evaluations of demonstration projects with beneficiary engagement components have shown promise that these strategies can have a positive impact on beneficiary behavior.[2] For example, evaluations have shown that financial incentives for specific health behaviors can

---

[2] https://www.in.gov/fssa/files/Lewin_IN%20HIP%202%200%20Interim%20Evaluation%20Report_FINAL.pdf

0005

prompt beneficiaries to engage in those specific behaviors. Kentucky will include evaluation of the outcomes associated with these requirements in its Evaluation Design to further enrich the evidence regarding beneficiary engagement strategies.

Kentucky's use of beneficiary-directed services through the *Deductible Account* and *My Rewards Account* is also designed to incentivize appropriate and responsible utilization of health care services and to strengthen beneficiary engagement. The accounts are designed to encourage beneficiaries to engage in healthy behaviors.

The approval of the waiver of retroactive eligibility encourages beneficiaries to obtain and maintain health coverage, even when healthy. This is intended to increase continuity of care by reducing gaps in coverage when beneficiaries churn on and off Medicaid or sign up for Medicaid only when sick.

Imposition of a non-eligibility period for failing to complete timely redetermination of eligibility encourages individuals to maintain compliance with longstanding beneficiary responsibilities described in regulation that also protect program integrity.

Taken together, the evidence tying certain beneficiary behavior to improved health outcomes supports the rationale that these requirements promote the objectives of the Medicaid program. CMS has concluded that the demonstration will also meet several additional goals, including encouraging responsible utilization of services, promoting continuity of care by reducing gaps in coverage, and improving program integrity.

### 3. The demonstration will remove potential obstacles to a successful beneficiary transition to commercial coverage.

Kentucky HEALTH is designed to work more like insurance products sold on the commercial market. Kentucky's application noted the significant number of individuals estimated to move between Medicaid eligibility and Marketplace coverage. In order to ensure continuity of care, which is important for improving health outcomes, Kentucky HEALTH seeks to provide beneficiaries the tools to successfully utilize commercial market health insurance, thereby removing potential obstacles to a successful transition from Medicaid to commercial coverage.

The demonstration includes several features that align with common features of commercial market plans. For instance, Kentucky HEALTH includes premium payment requirements (with a non-eligibility period for certain beneficiaries for non-payment, similar to provisions CMS has approved in other states[3]), deductibles, and limited enrollment windows, all of which beneficiaries are likely to encounter should they transition off of Medicaid and into commercial coverage. Further, Kentucky HEALTH provides participants with an opportunity to use the *My Rewards Account*, which can be used to access certain additional benefits in a manner similar to a Health Savings Account available through many commercial plans.

The *Deductible Account* is also likely to prepare beneficiaries to manage their coverage in the commercial market, where plans often impose deductibles.

---

[3] https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/?entry=25478

Similar to the standard commercial market policies, Kentucky HEALTH will require monthly premiums for certain populations, and benefits will start prospectively from the initial premium payment. Kentucky may adjust premium amounts incrementally over time as it evaluates the outcomes of the demonstration, not to exceed statutory limitations.

Also, Kentucky HEALTH will require beneficiaries to complete the annual redetermination process (with a non-eligibility period for non-compliance for certain populations), which will help educate beneficiaries on the need to timely complete enrollment requirements because of limited opportunities to enroll in coverage. While CMS previously did not approve a request from another state for a similar non-eligibility period for failure to complete redetermination, it believes that this policy should be evaluated and is likely to support the objectives of Medicaid to the extent that it prepares individuals for a smooth transition to commercial health insurance coverage and ensures that resources are preserved for individuals who meet eligibility requirements.

Similar to how commercial coverage operates, coverage eligibility under Kentucky HEALTH will be impacted for certain individuals for nonpayment of premiums, failure to report changes in circumstances that affect eligibility, or failure to complete redetermination. However, the state has provided for an "on-ramp" that enables these individuals to regain eligibility and successfully access all of the benefits, resources, and tools of the Kentucky HEALTH program, without waiting until the end of the non-eligibility period. CMS also notes that Kentucky has taken steps to protect beneficiaries by exempting certain vulnerable populations, such as pregnant women and individuals who are medically frail, from these policies, as well as by allowing temporary good cause exemptions in certain circumstances for beneficiaries who cannot meet the applicable requirement. Completion of timely redeterminations and reporting of changes in circumstances that affect eligibility are also fundamental safeguards for purposes of protecting program integrity.

Overall, CMS believes that Kentucky HEALTH has been designed to empower individuals to improve their health and well-being. If successful in its objectives, Kentucky HEALTH would improve health outcomes, promote increased upward mobility and improved quality of life, increase individual engagement in health care decisions, and prepare individuals who transition to commercial health insurance coverage to be successful in this transition. At the same time, Kentucky HEALTH would ensure vulnerable individuals like people with disabilities and pregnant women continue to receive medical assistance. By lessening dependence on government assistance and promoting individual self-sufficiency, Kentucky's efforts should also help to promote the fiscal sustainability of the program to better protect services for the Commonwealth's most vulnerable.

**Consideration of Public Comments**

Both Kentucky and CMS received a large volume of comments during the state and federal public comment periods. Consistent with federal transparency requirements, CMS reviewed all of the materials submitted by the Commonwealth, as well as all the public comments it received, when evaluating whether the demonstration project as a whole was likely to promote the

objectives of the Medicaid program, and whether the waiver and expenditure authorities sought were necessary and appropriate to implement the demonstration. In addition, CMS took public comments submitted during the federal comment period into account as it worked with the Commonwealth to develop the special terms and conditions (STCs) that accompany this approval, and that will bolster beneficiary protections, including specific state assurances around these protections to further support beneficiaries.

Comments in support of the application noted its efforts to promote beneficiary responsibility and accountability and enhance sustainability of the program in the long-term. Supporters noted that beneficiary engagement provisions, such as the cost-sharing and premium requirements, aligned with aspects of the private insurance market. Supporters also noted their agreement with the principle that working-age able-bodied adults meet community engagement activities as a condition of eligibility. Others supported the Commonwealth's efforts to expand services for substance use disorder by lifting the IMD exclusion for substance use treatment.

Opposing commenters expressed general disagreement with efforts to modify the Commonwealth's Medicaid expansion program. Some offered more specific feedback regarding individual elements of the demonstration or the impact of certain provisions on distinct populations. Some commenters expressed the desire to see greater detail regarding how the program would be operationalized, particularly with respect to provisions like the community engagement requirements. Other comments expressed concerns that these requirements would be burdensome on families or create barriers to coverage.

Many commenters who opposed the community engagement requirement emphasized that CMS has rejected similar proposals in the past. Commenters reported that most non-disabled adult Medicaid beneficiaries are already employed and that imposing this requirement would create significant barriers to access for vulnerable individuals who are not able to work or otherwise meet the requirements. To address these concerns, Kentucky has agreed to important protections for vulnerable individuals, including maintaining a system that identifies, validates and provides reasonable accommodations for those who may not be able to meet the requirements, or who need assistance to do so, due to disability. Kentucky will also deem SNAP or TANF participants who are exempt from SNAP or TANF work requirements to satisfy the Kentucky HEALTH community engagement requirement. CMS also acknowledges comments from those concerned that the majority of individuals who will be subject to the community engagement requirement may already be working. CMS notes that beneficiaries who work at least 120 hours per month are deemed to satisfy the community engagement reporting requirements. Moreover, CMS believes that there would still be a significant number of individuals for whom the incentives under this demonstration may spur new community engagement activity. Some commenters cited evidence that, since an individual needs to be healthy to be able to work or look for a job, a work requirement can prevent an individual from getting the health care they need to be able to work. CMS and Kentucky acknowledged these concerns and Kentucky will be exempting from the requirement those individuals who are medically frail, as well as those whom a medical professional has determined are unable to work due to illness or injury. Finally, some commenters questioned the efficacy of work requirements in other public programs. CMS has considered those comments and decided to allow states to test the implementation of community

engagement requirements in Medicaid, subject to the parameters set out in the January X state Medicaid directors letter.

Several commenters noted that the 10-day requirement for reporting changes in circumstances would present a substantial burden on beneficiaries and that the proposed period of non-eligibility for beneficiaries who fail to report any change would have the potential to harm individuals who would lose eligibility. CMS and the state have responded to those comments and the state will impose a period of non-eligibility only where the unreported change in circumstances would have resulted in loss of eligibility for Medicaid, had it been reported. In addition, where an individual experiences a period of non-eligibility, Kentucky is providing opportunities to return to eligibility.

Several commenters noted that the state's Medicaid offices, where many beneficiaries must go to report those changes, and the phone lines used to call to report changes are already busy and the calls and visits are time consuming. We understand that the state has made improvements in its call center operations and beneficiaries are able to report changes both over the phone and electronically. This is expected to reduce the burden of reporting and increase beneficiaries' likelihood for success in meeting the requirements. CMS also will track beneficiary success in meeting these requirements as part of ongoing demonstration monitoring. Additionally, Kentucky will allow good cause exemptions in certain circumstances for beneficiaries who cannot meet their requirement. Kentucky also will be required to provide reasonable modifications for beneficiaries with disabilities.

CMS recognizes that Kentucky was responsive to many concerns raised through the public notice and comment process by making several key changes to its demonstration application. Kentucky exempted primary caregivers of a dependent from work and community engagement requirements (one primary caregiver per household), and removed a proposed amendment to eliminate allergy testing and private duty nursing as covered services, after public comments indicated concern from consumers, beneficiaries, and others.

To help determine whether the demonstration is meeting its goals of improving quality, accessibility, and health outcomes, Kentucky will submit, for CMS comment and approval, a draft evaluation design with implementation timeline, no later than one hundred eighty (180) days after demonstration approval. CMS will work with Kentucky to ensure that the comments received also inform the monitoring and evaluation design and the necessary oversight is in place to provide for program adjustments when necessary.

CMS' approval of this demonstration is conditioned upon compliance with the enclosed list of waiver and expenditure authorities and the STCs defining the nature, character and extent of anticipated federal involvement in the project. The award is subject to our receiving your written acknowledgement of the award and acceptance of these STCs within 30 days of the date of this letter. Your project officer for this demonstration is Ms. Andrea Casart. She is available to answer any questions concerning your demonstration project under section 1115 of the Act. Ms. Casart's contact information is as follows:

> Centers for Medicare & Medicaid Services
> Center for Medicaid and CHIP Services
> Mail Stop: S2-03-17
> 7500 Security Boulevard
> Baltimore, MD 21244-1850
> Email: Andrea.Casart@cms.hhs.gov

Official communications regarding program matters should be sent simultaneously to Ms. Casart and Ms. Shantrina Roberts, Acting Associate Regional Administrator, in our Atlanta Regional Office. Ms. Roberts' contact information is as follows:

> Centers for Medicare & Medicaid Services
> Atlanta Federal Center
> 61 Forsyth Street, SW, Suite 4T20
> Atlanta, Georgia 30303-8909
> E-mail: Shantrina.Roberts@cms.hhs.gov.

If you have questions regarding this approval, please contact Ms. Judith Cash, Acting Director, State Demonstrations Group, Center for Medicaid and CHIP Services, at (410) 786-9886. Thank you for all your work with us, as well as stakeholders in Kentucky, over the past months on this new demonstration.

Sincerely,

*/s/ Demetrios L. Kouzoukas*

Demetrios L. Kouzoukas
Principal Deputy Administrator

Enclosures

cc:   Shantrina Roberts, Acting Associate Regional Administrator, CMS Atlanta Regional Office